[See Cases Nos. 5,971 and 5,974.]

———

## Case No. 5,976.

### In re HAMILTON.

[1 Ben. 455.] [1]

District Court, S. D. New York. Oct., 1867.

HABEAS CORPUS AD TESTIFICANDUM—MILITARY DESERTER—PERSONAL IDENTITY.

1. Where a person, confined in prison in Philadelphia, was brought to this state in charge of an officer, under a writ of habeas corpus ad testificandum, issued out of this court, and, after his arrival here, applied to a state court and obtained a writ of habeas corpus, under the operation of which he was discharged by the state court from the custody of the officer, who returned to Philadelphia without him, *held*, that, as he was brought from Philadelphia under the writ issued by this court, and was still actually present before this court, he was still under its control, and must be sent back to the place from which he was brought for the purpose of testifying, and that, as his proper guardian had left him, he must be returned there by the marshal of this district.

2. Where a person, arrested as a deserter from the military service, was brought up under a writ of habeas corpus issued by this court, and the military authorities made return that he was regularly enlisted into the military service of the United States, which return the petitioner traversed, and, on the traverse, evidence was taken as to the identity of the petitioner with the person enlisted, *held*, that, on the proofs, the petitioner was the person enlisted, and that, as he was regularly enlisted, he must be remanded.

This case came before the court on a writ of habeas corpus, issued at the request of the petitioner [William L. Hamilton]. to procure his discharge from the military service of the United States. The return to the writ showed that he had been legally enlisted, and was held as a deserter. This return was traversed by the petitioner, and testimony was taken at considerable length before a United States commissioner, upon the issues raised by the traverse. Upon this testimony, and some oral testimony, given by the petitioner himself in court, the case was argued. In the course of the proceedings a collateral matter arose, which was first disposed of by the court. This matter arose out of the following facts: Before the issuing of this writ, Hamilton, being in Philadelphia, was arrested by the military authorities there as a deserter, and was by them sent to Governor's Island, New York, to be tried for desertion. On his application, however, before he left Philadelphia, a writ of habeas corpus in his favor had been issued out of one of the state courts. This writ was directed to one Captain Brown, who had had Hamilton in charge after his arrest.

———

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Brown made a return to the writ of habeas corpus, but that return was by the state court adjudged insufficient, and that court committed Brown to Moyamensing Prison, in Philadelphia, for contempt of the writ. After the habeas corpus was issued out of this court, it was deemed important that Captain Brown's testimony should be taken in the matter, and for that purpose a writ of habeas corpus ad testificandum was applied for, and issued by this court, directed to the keeper of the prison in Philadelphia. This writ was returned to this court as personally served upon the keeper of the prison at Philadelphia, who failed to make any return to it, and thereupon the court issued a writ of attachment against him, but, before this writ was issued to the marshal, Mr. Mann, the district attorney of the state court in Philadelphia, appeared with the return of the keeper, and thereupon the default was waived, and the return submitted to this court. Mr. Mann stated to the United States district attorney in New York, that if the court should hold that the return was insufficient there was no need of sending on an officer, but on letting the keeper of the prison know what the decision was, Captain Brown would be forthcoming. The court having decided the keeper's return to be insufficient, the United States district attorney wrote to the keeper, telling him so, and directing him to have Brown before Commissioner Osborn, to whom it had been referred to take the evidence, on a day which he named. The keeper accordingly put Captain Brown in charge of an officer, who brought him to New York but did not report his arrival to the United States district attorney in person. His arrival was, however, reported to the military officer who had charge of the proceedings in Hamilton's case on behalf of the military authorities, and he, without the knowledge of the United States district attorney, applied to Judge Cardozo, of the court of common pleas for the city and county of New York, and obtained a writ of habeas corpus. directed to the officer who had Brown in charge, to bring Brown before that court. On the return of this writ, the officer produced Brown before the court of common pleas, but did not notify the United States district attorney of the proceedings, and did not have with him any copy of the committal papers, and declined to have the case adjourned for the purpose of procuring them. Brown was thereupon discharged from custody of the officer, who went back to Philadelphia without his prisoner. Brown then went before the commissioner and gave his evidence in Hamilton's case, and was present in court on the hearing. The authorities in Philadelphia having complained of the manner in which Brown had been discharged, the matter was brought to the attention of the United States district attorney in New York, who, on the hearing of Hamilton's case, stated the facts to the court, and asked that, inasmuch

as Brown had been brought here under the writ of habeas corpus ad testificandum, this court would order him to be returned to Philadelphia, in accordance with it, notwithstanding the proceeding before Judge Cardozo.

BLATCHFORD, District Judge. Inasmuch as Captain Brown came here under the habeas corpus ad testificandum issued by this court, and is now before the court, he is not out of its power, and this court has jurisdiction of the matter. It was decided in the Kaine Case, that a party who was brought up by a writ of habeas corpus was under the control of the court which issued it, till the writ was disposed of. The original writ in this matter bore the name of the district attorney of the United States for this district upon its face. Yet the officer from Philadelphia, who brought Brown here in obedience to that writ, when served with the habeas corpus issued by Judge Cardozo, did not notify the district attorney of this fact. It appeared from the petition on which Judge Cardozo's writ was issued, that it was not alleged in it that Brown was held by any writ of this court at all, but only by a commitment of the court of quarter sessions of Philadelphia. And the return did not mend the matter, for it merely set out that Brown was held by an order of Mr. Perkins, the superintendent of the prison in Philadelphia. This court will assume that, if the officer had made a proper return, Judge Cardozo would have done his duty and at once dismissed the writ. But, whatever may have been his private information, he was bound by the papers before him, and on those no valid reason for detaining the prisoner appeared. However, neither his action nor the negligence of the officer can affect the rights of this court. Captain Brown has never been out of its jurisdiction, and the court has but one course to follow. It must send him back to the place from which he was brought for the purpose of testifying, and, as his proper guardian has abandoned him, the marshal must return him there, leaving him to such remedy as he may think proper for any injury he may have sustained from the state courts of Pennsylvania.

The question in Hamilton's Case having been argued on the evidence, the following decision was rendered:

BLATCHFORD, District Judge. The traverse to the return made by General Butterfield to this writ, denying that the petitioner was regularly enlisted into the service of the United States, and was regularly sworn on such enlistment, would appear to have been intended to raise the legal question of the regularity of the enlistment, and not the question of the identity of the petitioner. But the testimony has been addressed to the question of identity. The recruit was enlist-

ed in Philadelphia, on the 1st of April last, deserted on the 6th of April, and the petitioner was arrested on the 20th of August. On charges being preferred against him, he was sent to Governor's Island for trial, and is now brought up on this habeas corpus, the point being made that he is not the same individual who was enlisted. Though the traverse does not seem to raise this question, yet on the testimony, it is fair to the parties to dispose of the case on its merits. I have carefully examined the testimony, which was mainly taken before Commissioner Osborn. The only evidence produced by the petitioner is his own deposition. His language is very guarded on the question as to whether he did enlist. In the enlistment papers the recruit swore that he was twenty-one years of age. The petitioner swears that he is now nineteen, and has a mother living, his father being dead, and that he had been living with his mother in Philadelphia, until he was arrested there on the 20th of August. It is, therefore, to be noticed, that the petitioner admits that he lived in Philadelphia at the time of this enlistment. There is nothing in the case to show an alibi. The question of his enlistment was put to him, and he says that he does not recollect going to the office, and does not recollect signing the papers, and does not recollect taking the oath. The enlistment papers were shown to him, and he said that he could not read them, but he denied that either of the signatures was his. He was asked if he recognized Colonel Park, whose name is three times signed to the papers, and he said he did not. He was then asked if he was not enlisted before Colonel Park, and his answer was, "Not that I know of." On the other side, Colonel Park was sworn for the government, and, on looking at the petitioner, he said that he recognized him; first saw him at the surgeon's office; saw him there on April 1st; that he saw the papers and swore to them before the witness; and that Hamilton remained under his charge till April 6th, when he deserted. Then the medical paper was produced, and Colonel Park testified that he was present at the examination, and that, as far as he could judge, the recruit was perfectly sober. Colonel Park's testimony is very direct and clear, and he recognizes Hamilton as the party who swore to and signed the enlistment papers. Still, if the case stopped here, it might be claimed that it was but one oath against another; but in addition to that, there is the correspondence of the petitioner's personal appearance with the description in the enlistment papers. He is described in them as having brown eyes, dark hair, and florid complexion, and being five feet seven inches in height. He has brown eyes, dark hair, and florid complexion, and, on measurement, he appears to be five feet seven and one-quarter inches in height—a very slight discrepancy. Another circumstance is his handwriting. There is a peculiarity in it

which can hardly be the result of accident. The recruit signed his name, on enlistment, in two places, and, after the word "William," there is a period. That same period is found, in the same position, in the signature of the petitioner to his petition for the writ, and in his signature to the traverse of the return. In the latter he has written out his middle name in full—William Lewis Hamilton—and has put a period after the word Lewis also, showing that that was a habit of his, which is quite peculiar, and is a strong circumstance to show that the signatures are made by the same person. Moreover, the general correspondence of the signatures is such that there is no room to doubt that they were made by the same person. In view of the positive evidence of Colonel Park, the correspondence of the signatures, and the doubtful character of the petitioner's testimony, I can have no reasonable doubt that the petitioner is the party who signed the enlistment papers. Moreover, in the medical paper, the surgeon states that the recruit has a crucifix stamped on his left arm, and the petitioner admits that he has a crucifix on his left arm, with a Virgin Mary on each side. As the petitioner was the person who signed the enlistment papers, in which he swore that he was twenty-one years of age, he was regularly enlisted, and must, therefore, be remanded.